IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Those Characters from Cleveland, LLC, | |
| Plaintiff, | Case No. 23-cv-15080 |
| v. | Judge Franklin U. Valderrama |
| The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified On Schedule A, | Mag. Judge Jeffrey T. Gilbert |
| Defendants | |

**MEMORANDUM IN SUPPORT OF:**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (F.R.C.P. 12(b)(2))**
**AND LACK OF SERVICE OF PROCESS (F.R.C.P. 12(b)(5)) AND**
**FOR A FEE AWARD UNDER 28 U.S.C. § 1927**

Jonathan Phillips
PHILLIPS & BATHKE, P.C.
4541 North Prospect Road
Suite 300A
Peoria Heights, Illinois 61616
309 643 6518
jlap@pb-iplaw.com

## Table of Contents

INTRODUCTION ..........................................................................................................................1

RELEVANT FACTUAL AND PROCEDURAL HISTORY ........................................................2

ARGUMENT ................................................................................................................................7

    I.    This Court lacks personal jurisdiction over DankFutura, an Irish business that has not sold a single infringing item into this District ........................................7

    II.    DankFutura was not properly served, which is easy under Irish law, if not Chinese law..............................................................................................................10

    III.    DankFutura should be awarded its attorneys' fees in being forced to prepare and bring this motion, any reply, and any argument................................12

CONCLUSION ...........................................................................................................................15

## INTRODUCTION

The Motion asks two distinct, threshold questions. All other questions are irrelevant at this time.

- Can an apparently uninvestigated, so-called Schedule A case survive against an Irish, not Chinese, defendant that has not sold a single infringing article anywhere, let alone within this State continue?
- Is service of process to an Irish defendant by Plaintiff's counsel to an unidentified email provided to Plaintiff's counsel by a third-party proper under the Hague Service Convention whose service obligations in Ireland are much less stringent than in China?

Considering these questions leads to only one result: Dismissal. And because Plaintiff had a chance to correct its mistakes and failed to do so, DankFutura should be awarded its fees in being forced to bring this Motion.

This case is one of the thousands of Schedule A cases in which plaintiffs sue dozens or hundreds defendants with boilerplate complaints. Defendants first learn of the suit when all of their assets are frozen due to an ex parte temporary restraining order. These drastic results stem from entries of temporary restraining orders based on boilerplate complaints lacking particularized allegations and pro forma motions for temporary restraining orders without particularized allegations. Often, preliminary injunctions are

1

entered without notice to defendants, in violation of the Rules of Civil Procedure. Fed. R. Civ. P. 65(a)(1).

Through improper joinder of defendants, these "Schedule A" plaintiffs deny the judiciary tens of millions of dollars in filing fees. Parties bringing procedural irregularities to the courts' attention are most often voluntarily dismissed—perpetuating , when a party tries to bring procedural irregularities to courts' attention, plaintiffs most often voluntarily dismiss the defendant—as happened here. [Docs. 46, 51] Thus plaintiffs' narrative is perpetuated and they enjoy the opportunity to continue telling a one-sided story where their lack of investigation goes unexamined.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed this action boldly claiming "counterfeiting."[1] [Doc 1, ¶ 19] Claiming Defendants created internet stores on various platforms, it then complains about what those platforms do. [Doc. 1, ¶ 20] Plaintiff then suggest Defendants can edit these platform's websites, as if they control the entire TeePublic platform. [Doc. 1, ¶ 22] They do not. Ex. 1. Putting a thin veneer on improper joinder, Plaintiff suggests that it is somehow strange that stores on

---

[1] Not all infringement is counterfeiting.

2

these third-party platforms use similar checkout methods or shopping carts. [Doc. 1, ¶ 24] No doubt. For example, all Amazon checkouts look the same. These untrue, at least for DankFutura, allegations are hardly surprising. This very complaint has been recycled dozens, if not hundreds of times.

Plaintiff repeats these same unparticularized and, as to DankFutura, incorrect allegations in its motion seeking a temporary restraining order. [Doc. 11, pp. 1-2] This boilerplate, unparticularized filing even implying defendants might control TeePublic's teepublic.com domain name. [Doc. 11, pp. 4-5] Even without particularized facts that might warrant ex parte relief,[2] Plaintiff froze DankFutura's assets based on the incorrect, one-sided narrative it spun.

DankFutura is an Irish, not Chinese, business. Ex. 1. It and its operator are in Ireland. It creates humorous, satirical, or parody tee shirt designs. *Id*. They are offered on the teepublic.com platform (**"TeePublic"**). *Id*.

---

[2] *See,* Fed. R. Civ. P. 65(b)(1)(A) (when seeking TRO, party mut provide "specific facts . . . that immediate and irreparable injury, loss, or damage will result."); *see, e.g., Zuru (Singapore) Pte, Ltd. v. Individuals, Corps, Ltd. Liabi. Cos., P'ships & Uninc. Ass'ns Identified on Schedule A,* No. 20-00395, 2021 WL 310336, *5 & n. 6 (D. Haw. Jan. 29, 2021) (denying ex parte TRO when "the cookie-cutter statements contained in each declaration suggest that Plaintiffs did not expend much effort in this case to establish any particularized facts that would warrant ex parte relief.")

TeePublic claims to be the world's largest marketplace for independent creators to sell the highest-quality merchandise bearing their art. Ex. 1; *About TeePublic,* TeePublic, available at https://teepublic.com/about (last accessed Dec. 12, 2023). If a design on a particular product is ordered, then TeePublic's production team causes the product to be created and ships it. *Id.*; Ex. 1. The artists on TeePublic do not create or ship infringing goods—they merely upload designs. Ex. 1.

Given TeePublic's website is thoroughly covered with references to "independent artists," That DankFutura's "Internet Store[] . . . make[s] it difficult for consumers to distinguish such counterfeit site from an authorized website." [Doc. 11-1, ¶ 14] simply cannot be true. It seems Gorman's boilerplate declaration's allegations, made only upon information and belief, were hardly investigated. Gorman's declaration is further belied by the fact that had it been reviewed, DankFutura's store prominently states "I'm an independent artist . . ." Ex. 1. Expressly claiming independent artist status is inapposite to a claim of offering genuine Care Bear merchandise.

DankFutura did not create a website or engage in any modification of the TeePublic platform as Plaintiff's filings suggest. It simply uploaded designs

4

like other users of that platform. *Id.*, *cf.* Doc. 1, ¶¶ 20, 22, 24. At worst, DankFutura uploaded a single design that Plaintiff objects to. Ex. 1. It did so from Ireland. *Id.* And, most important, DankFutura *did not make a single sale of this design into Illinois. Id.* In fact, it did not sell the design *at all*. Ex. 1.

Thus, DankFutura was surprised to learn that, without notice, its assets were frozen by TeePublic because of the TRO entered. Ex. 1; [Doc. 27]. Despite Plaintiff only complaining about one unsold shirt design, DankFutura has had its income for *hundreds* of designs frozen, handicapping its business during the holiday season. Ex. 1.

Not only was the TRO secured ex parte, but the record remained sealed until the same day the preliminary injunction motion was granted. [Docs. 42, 43] Attorney William Kalbec did not claim to serve anyone, let alone properly, until after the preliminary injunction was entered. [Doc. 44] Thus, Plaintiff secured a preliminary injunction in plain violation of Federal Rule of Civil Procedure 65, which requires notice to the parties. Fed. R. Civ. P. 65(a)(1). It is no surprise then that no Defendant, let alone DankFutura appeared. Defendants were simply not afforded the opportunity to do so.

5

With its business crippled, DankFutura promptly retained counsel who promptly reached out to opposing counsel. On December 6, 2023, undersigned contacted all counsel for Plaintiff. Plaintiff's counsel was advised that: (1) DankFutura is Irish; (2) Dank Futura does not have its own website, it uses a standard platform; (3) there are no counterfeits or conspiracy; and (4) Dank Futura did not sell a single infringing article. Ex. 3. In that letter, DankFutura sought a dismissal and to sweeten the deal even offered a small payment. The letter sought a prompt response due to the continuing economic damage to DankFutura. No response to that letter was received.[3]

Later, in response to a different email seeking an extension to respond to the Complaint, Plaintiff's counsel demanded a large payoff to dismiss the improperly brought complaint. Ex. 4. This bold demand came not only after Plaintiff was put on notice of its folly, but also after Plaintiff secured expedited discovery that would confirm as much. Even after notice and opportunity to investigate, Plaintiff persisted in demanding a payment. Left with no other choice due to Plaintiff's failure to investigate, its failure to correct course upon

---

[3] This seems to be a common problem. [Doc. 46, pp. 3-4] (indicating Plaintiffs' counsels' failure to respond to Defendant Harebrained's outreach).

6

learning of its mistakes, and its continued attempt to hold the business hostage to secure unwarranted settlement monies, DankFutura is forced to file this Motion.

**ARGUMENT**

Under Rule 12(b), "no defense or objection is waived by joining it with one or more other defenses or objections . . . in a motion." DankFutura submits two arguments as demonstrating this case should be dismissed. First, this Court lacks personal jurisdiction over it. Second, it was not properly served.

I. <u>This Court lacks personal jurisdiction over DankFutura, an Irish business that has not sold a single infringing item into this District</u>

A motion to dismiss under Rule 12(b)(2) challenges the Court's jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). Plaintiff has the burden to show jurisdiction. *Curry v. Revolution Labs., LLC,* 949 F.3d 385, 392 (7th Cir. 2020). In federal question cases, the Court has personal jurisdiction only when (1) either federal law provides jurisdiction or the law of the state authorizes process service on the defendant and (2) due process is satisfied. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).

7

> It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States. . . . Congress ordinarily legislates with respect to domestic, not foreign matters. Thus, unless there is the affirmative intention of the Congress clearly expressed to give a statute extraterritorial effect, we must presume it is primarily concerned with domestic conditions." *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (internal quotations and string citations omitted)

Neither the Lanham Act nor the Copyright Act claim to apply to Irish entities in Ireland. Thus, Plaintiff is left to show an Irish entity with no sales of infringing products into Illinois could be served under Illinois law. *Mobile Anesthesiologists Chicago, LLC,* 623 F.3d at 446. It cannot do so.

There are two kinds of personal jurisdiction: general and specific. The first exists only if affiliations with Illinois 'are so constant and pervasive 'as to render it at home in the state. *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014). The latter, specific jurisdiction, is "case-specific" and exists when the defendant purposefully directs its activities at residents of the forum state and when the plaintiffs claim is linked to the those directed activities or contacts with Illinois. *Burger King Corp. v. Rudzewicz*, 105 S. Ct. 2174, 2182 (1985). Specific jurisdiction only exists when the specific contact with Illinois is the harming activity. *Id.*

8

An Irish entity is not at home in Illinois. DankFutura is not incorporated here nor is its principal place of business here. *Daimler AG,* 134 S. Ct. at 760-61. It is at home in Ireland. Thus, no general jurisdiction exists.

Turning to specific jurisdiction, it cannot exist under at least two of the essential requirements. One requirement is that the litigation must "arise out of" DankFutura's purposefully availed contacts with Illinois. *Burger King,* 105 S. Ct. at 2182. Put another way, DankFutura would have had to sell an infringing product into Illinois. It did not. Ex. 1. It seems Plaintiff failed to conduct a "test-buy" to confirm anything about DankFutura, let alone create jurisdiction. *See NBA Props. v. HANWJH,* 46 F. 4th 614, 625 (7th Cir. 2022), *cert denied* 2023 U.S. LEXIS 340 (Jan. 9, 2023). DankFutura has not sold a single infringing article into Illinois and this Court lacks jurisdiction over it.

The other impossible-to-meet element requires Plaintiff to show that it "comport[s] with traditional notions of fair play and substantial justice" to drag an Irish company to Illinois to answer for a design that was never sold here. *Lexington Ins. Co. v. Hotai Ins.,* 938 F.3d 874, 878 (7th Cir. 2019). It does not track fair play and does no justice, let alone substantial justice, to drag DankFutura to this Court, to freeze all of its assets—not just those associated

9

with supposedly infringing products, and subject it to the jurisdiction of the Court.

 II. <u>DankFutura was not properly served, which is easy under Irish law, if not Chinese law</u>

The Court should also dismiss the case for lack of proper service. Fed. R. Civ. P. 12(b)(5). Absent proper service, a court cannot ordinarily exercise power over a party named as a defendant. *Murphy Bros., v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 350 (1999). "The plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). Only proper service vests a district court with personal jurisdiction over a defendant. *Luxottica Group S.p.A. v. P'ships & Unincorporated Ass'n Identified on Schedule "A",* 391 F. Supp. 3d 816, 821 (7th. Cir. 2019).

Plaintiff moved, ex parte, to serve by email premised on apparent "intentional efforts to conceal identities." [Doc. 11, p. 5] DankFutura did no such thing. <u>Ex. 1</u>. Using a store name is hardly the nefarious avoidance technique Plaintiff alleges.

The only other possible reason to allow service by email stems from this District's courts' historical treatment of Schedule A cases. Plaintiffs in those cases suggested that service on Chinese entities could be difficult due to China's objections to certain portions of the Convention of 15 November 1965 on the Service Abroad of Judicial and Extra Judicial Documents in Civil or Commercial Matters. ("**Hague Service Convention**") Courts routinely granted motions to serve by email because of how long it takes China's Central Authority to serve process.

Here, Plaintiff did not even argue the point—apparently relying on longstanding practice based on implications DankFutura was located in China. Plaintiff's Motion [Doc. 11] provided no reason why service by email is appropriate other than alleged business names.

Unlike China, it is not hard to secure service in the Republic of Ireland under the Hague Service Convention. Ireland did not opt out of Article 10(a) of the Hague Service Convention like China did. So Plaintiff could have served by mail. Also, private process server—properly instructed by a solicitor—as well under Article 10(b) of the Hague Service Convention. In short, it is no harder to secure service in Ireland than it is in most states in the U.S.

11

According to the returned summons, service on DankFutura was attempted through Plaintiff's attorney emailing unidentified "email addresses provided for Defendants by third parties." [Doc. 44, p. 2] That service did not satisfy international law and the United States' treaty obligations. And given the Irish-location of DankFutura, there is no compelling reason for this Court to excuse those obligations as there might be with Chinese-based defendants—a point not even argued by Plaintiff. Without proper service, this Court lacks jurisdiction over DankFutura—and its frozen assets.

### III. DankFutura should be awarded its attorneys' fees in being forced to prepare and bring this motion, any reply, and any argument

DankFutura has had its business operations impacted, during the holiday season, because of Plaintiffs' failure to investigate its claims. More troublingly, Plaintiff's counsel was advised of its failure to investigate and did not correct it. Ex. 3. Facing a similar situation just weeks ago, another court in this District awarded fees under 28 U.S.C. § 1927 for the vexatious multiplication of proceedings or, in the alternative, its inherent authority. "[B]y filing a complaint with many defendants, plaintiff's counsel assumes the responsibility to vigilantly and scrupulously monitor the case for defendants that do not fit the allegations and to promptly take appropriate action when

12

such facts come to light." *Roblox Corp. v. Bigfinz*, No. 1:23-cv-05346, 2023 U.S. Dist. LEXIS 212147, at *5-6 (N.D. Ill. Nov. 29, 2023) (Durkin, J.). Like that case, plaintiffs' plaintiff's attorneys are identical, counsel was advised of the issues before defendant's motion to dismiss was filed, and there were no Illinois sales. *Id. at* *1, 4. Had Plaintiff investigated before filing, this Motion would not be necessary. Had Plaintiff investigated and dismissed, then this Motion would not be necessary. By failing to dismiss and, instead, continuing to demand money to dismiss DankFutura, Plaintiff has unreasonably and vexatiously multiplied the proceedings. *See* 28 U.S.C. § 1927.

It is incredible that mere weeks after its attorneys were sanctioned for a similar and Plaintiff still failed to correct its errant ways. Anything short of a fee award in this situation would embolden plaintiffs in these cases. Plaintiffs will continue to file misjoined cases, costing taxpayers an amount that one plaintiff's attorney stated to be a quarter of a billion dollars.[4] Without any concern about fee awards, plaintiffs will be emboldened to avoid proper

---

[4] *See* Setti, R., Poritz, I, *Brands Flock to Chicago Court in War on Internet Counterfeiters,* Bloomberg Law (Apr. 5, 2023), available at https://news.bloomberglaw.com/ip-law/brands-flock-to-chicago-court-in-war-on-internet-counterfeiters (quoting attorney Justin Guadio).

investigation. At least one plaintiff's attorney is reported to acknowledge "that non-infringing sellers may get tied up in these suits. . . ."[5]

Plaintiff secured a TRO ex parte, a preliminary injunction without notice, and holds all the cards. It is emboldened: With full knowledge of its mistake, it still demands money rather than simply correcting its mistake. Without a fee award, why would plaintiffs in Schedule A cases behave any different? They freeze all assets of a business on a given platform, not just those associated with supposedly infringing goods. They have enormous leverage and can tell a one-sided story to the judiciary.

This practice harms not only defendants, but also the public. By crippling the businesses of non-infringing sellers, plaintiffs in Schedule A cases can also manipulate the marketplace to remove legitimate businesses selling gray market or aftermarket (and correctly labeled as such) products from the market, raising prices on consumers. And consumers are denied the creations of artists when spurious claims of infringement for what is fair use result in listings being taken down.[6] Copyright laws promote the arts, not handicap

---

[5] *Id.* (attributed to William Stroever).

[6] Notably, the Digital Millenium Copyright Act provides a cause of action and fee awards when a person submits a notice to delist products without investigation or considering fair

14

them. U.S. CONST., Art. 1, § 1, cl. 8.

Whether the Schedule A model is proper, its use without adequate investigation by plaintiffs should not be countenanced. Its use against defendants, like DankFutura, who put plaintiffs on notice of their mistakes is inappropriate. DankFutura should not have to spend its resources to correct Plaintiff's failures. A fee award is appropriate.

## CONCLUSION

As shown above, this Court simply lacks jurisdiction over DankFutura. And it was not properly served. It should be dismissed from this case. This Court also lacks jurisdiction as it was not properly served. Finally, given Plaintiff's failure to correct its mistakes after they were brought to its attention, which caused this motion, DankFutura should be awarded its fees under 28 U.S.C. § 1927.

---

use. *See, e.g., Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154-55 (9th Cir. 2016); 4 NIMMER ON COPYRIGHT § 12B.08 (2022).

        Respectfully submitted,

        DANKFUTURA, by

        <u>s/ Jonathan Phillips</u>
        Jonathan Phillips
        PHILLIPS & BATHKE, P.C.
        4541 North Prospect Road
        Suite 300A
        Peoria Heights, Illinois 61616
        309 643 6518
        jlap@pb-iplaw.com